**UNITED STATES OF AMERICA**
**MERIT SYSTEMS PROTECTION BOARD**

JOSE E. ROSARIO-FABREGAS,
         Appellant,

      v.

DEPARTMENT OF THE ARMY,
         Agency.

DOCKET NUMBER
NY-0752-18-0221-I-1

DATE: June 15, 2023

# THIS FINAL ORDER IS NONPRECEDENTIAL[1]

<u>Jose E. Rosario-Fabregas</u>, San Juan, Puerto Rico, pro se.

<u>Elizabeth Moseley</u>, Jacksonville, Florida, for the agency.

**BEFORE**

Cathy A. Harris, Vice Chairman
Raymond A. Limon, Member

**FINAL ORDER**

¶1      The appellant has filed a petition for review and the agency has filed a cross petition for review of the initial decision, which sustained the appellant's removal. For the reasons discussed below, we DENY the appellant's petition for review and the agency's cross petition for review. We AFFIRM the initial decision, AS MODIFIED to find that the agency proved its insubordination

---

[1] A nonprecedential order is one that the Board has determined does not add significantly to the body of MSPB case law. Parties may cite nonprecedential orders, but such orders have no precedential value; the Board and administrative judges are not required to follow or distinguish them in any future decisions. In contrast, a precedential decision issued as an Opinion and Order has been identified by the Board as significantly contributing to the Board's case law. *See* 5 C.F.R. § 1201.117(c).

charge and that the insubordination charge supports the appellant's removal, and to expand upon the administrative judge's determination that the appellant failed to prove any of his affirmative defenses.

## BACKGROUND

¶2　　The appellant most recently held a GS-12 Biologist position in the agency's U.S. Army Corp of Engineers, stationed in San Juan, Puerto Rico. Initial Appeal File (IAF), Tab 1 at 1, Tab 5 at 6. In February 2010, the agency removed him for misconduct, but the Board reversed on due process grounds in November 2011. *Rosario-Fabregas v. Department of the Army*, 122 M.S.P.R. 468, ¶ 2 (2015), *aff'd*, 833 F.3d 1342 (Fed. Cir. 2016). The agency cancelled the appellant's removal and restored him to the employment rolls. *Id.*; *Rosario-Fabregas v. Department of the Army*, MSPB Docket No. NY-0752-10-0127-C-1, Compliance File, Tab 6 at 7, 15.

¶3　　Less than a month after the Board issued its decision reversing the appellant's removal, he submitted a letter to the agency from his treating psychiatrist, asking that the agency excuse him from work until January 2012. *Rosario-Fabregas*, 122 M.S.P.R. 468, ¶ 3; *Rosario-Fabregas v. Department of the Army*, MSPB Docket No. NY-0752-13-0167-I-1, Initial Appeal File (0167 IAF), Tab 11, Part 1 at 17 of 58. This return-to-work date was continually extended, first at the appellant's behest, and then based on the agency's demands for a medical release. *Rosario-Fabregas*, 122 M.S.P.R. 468, ¶¶ 3-5. In November 2012, the appellant provided a more detailed medical assessment. *Id.*, ¶ 5. The following day, however, the agency proposed the appellant's removal based on the same charges underlying the first removal action, and it placed him on paid administrative leave.[2] *Id.*, ¶ 5. The agency effectuated his removal in February 2013. *Id.*

---

[2] The appellant filed an appeal with the Board alleging that his absence between December 2011 and November 2012 was a constructive suspension. *Rosario-Fabregas*,

¶4       On appeal of his second removal action, the administrative judge sustained the agency's conduct unbecoming, inappropriate use of official time, and inappropriate use of Government property charges, but not its insubordination charge. *Rosario-Fabregas v. Department of the Army*, MSPB Docket No. NY-0752-13-0142-I-2, Final Order, ¶¶ 2-3 (July 1, 2016). The administrative judge mitigated the second removal action to a 30-day suspension, and the Board affirmed in July 2016. *Id.*, ¶¶ 1, 48. Notably, the Board stated that mitigation of the penalty was warranted because, inter alia, the appellant had no prior discipline and the agency's most serious charge—insubordination—was not sustained. *Id.*, ¶¶ 44, 48.

¶5       Although the administrative judge had ordered interim relief from the second removal action, the agency placed the appellant on paid administrative leave instead of returning him to the workplace pursuant to 5 U.S.C. § 7701(b)(2)(A)(ii)(II). *Rosario-Fabregas*, MSPB Docket No. NY-0752-13-0142-I-2, Petition for Review File, Tab 4 at 27-28. But after receiving the Board's final decision, the agency notified the appellant that his administrative leave would end, and he would be returned to duty. IAF, Tab 9 at 74-75. The events that followed culminated with the agency's third attempted removal of the appellant, which is the matter before us in the instant appeal.

¶6       The agency ordered the appellant to provide a medical release prior to his return-to-work date. *Id.* at 74. The parties subsequently agreed that the appellant would first serve his 30-day suspension and his return-to-work date would be September 6, 2016. *Id.* at 51, 69. A week before that scheduled return, the agency reminded the appellant that he needed to provide a medical release before returning to duty. *Id.* at 55. When his scheduled return-to-duty date arrived, the appellant began requesting sick and annual leave, which the agency granted throughout the month of September. *Id.* at 29-30, 33, 37.

---

122 M.S.P.R. 468, ¶¶ 9-19. The Board dismissed that appeal for lack of jurisdiction. *Id*., ¶¶ 1, 19.

¶7    On September 27, 2016, the appellant provided the agency a note from his treating psychiatrist.  However, instead of releasing the appellant to return to duty, the psychiatrist stated that the appellant should not return to work until December 1, 2016.  *Id.* at 40.  Over the next several months, the psychiatrist continually pushed the appellant's return-to-duty date back, ultimately to June 1, 2017.  *Id.* at 42, 44, 46.  During this period, the agency approved the appellant's requests for leave to cover this lengthy absence.  *Id.* at 38, 41, 43, 45, 48.

¶8    On May 4, 2017, the appellant's supervisor notified him that he was "expected to report to work" on June 1, 2017.  IAF, Tab 7 at 129.  She warned him that his absence from duty could not continue indefinitely and that he would face removal if he did not become available for duty on a regular basis.  *Id.* at 129-30.  In anticipation of the approaching June 1, 2017 return-to-duty date, she directed the appellant to provide a medical release no later than May 25, 2017.  *Id.* at 129.  However, the appellant was having difficulty scheduling an evaluation, so his supervisor extended the release deadline to June 21, 2017, with a July 5, 2017 return-to-work date.  *Id.* at 70-71.

¶9    The June 21, 2017 deadline passed without the appellant submitting a medical release, and around the same time, the appellant exhausted his accrued leave.  *Id.* at 136-37.  On June 22, 2017, the appellant requested advance sick or annual leave to cover his continued absence, but his supervisor denied the request because she had no reasonable assurance that the appellant would return to duty.  *Id.* at 136, 138-40.  Nevertheless, she approved the appellant's continued absence in a leave without pay (LWOP) status, while warning that if he did not report for duty on July 5, 2017, with a medical release, he would be considered absent without leave (AWOL).  *Id.* at 136-37.  The appellant did not submit a release or report for duty by July 5, 2017, and the agency began carrying him in AWOL status.  *Id.* at 136, 188.

¶10   On July 21, 2017, the appellant notified the agency that he had a July 31, 2017 appointment with another psychiatrist.  *Id.* at 226-27.  The appellant's

supervisor granted him approved LWOP pending the results of the July 31, 2017 evaluation, but she warned him that he must submit the psychiatrist's opinion on his ability to work no later than August 1, 2017. *Id.* at 225. On July 27, 2017, this psychiatrist notified the appellant that he would not be handling his case. *Id.* at 230. The appellant did not submit the required documentation, and he was again placed in an AWOL status. IAF, Tab 8 at 8, 102, 105.

¶11    On August 22, 2017, the appellant's supervisor proposed his removal based on charges of AWOL and excessive absence. IAF, Tab 6 at 250-58. In the meantime, on June 15 and August 24, 2017, the appellant's supervisor issued him instructions in response to what the agency perceived were harassing emails. IAF, Tab 5 at 103, Tab 6 at 8-9. Specifically, she instructed him not to communicate directly with his prior supervisor and not to send "email blasts." IAF, Tab 6 at 8-9. During the period for responding to his proposed removal, the appellant sent multiple emails that his supervisor considered to be in violation of these instructions. IAF, Tab 5 at 103-04, 120-39, Tab 6 at 9. As a result, his supervisor rescinded the pending proposal and issued a new one, dated October 11, 2017, which included an additional charge of insubordination. IAF, Tab 5 at 69-86. The proposal stated that any one of the charges would warrant the appellant's removal. *Id.* at 75-84. After the appellant responded, the deciding official upheld all the charges and removed the appellant effective August 24, 2018. *Id.* at 6-13.

¶12    The appellant filed a Board appeal, contesting the merits of this third removal action and raising affirmative defenses of whistleblower retaliation and discrimination based on disability and national origin. IAF, Tab 1 at 3-5, Tab 10, Tab 15 at 2. He waived his right to a hearing. IAF, Tab 1 at 2. The administrative judge developed the record and issued an initial decision affirming the appellant's removal. IAF, Tab 37, Initial Decision (ID). She sustained the AWOL and excessive absences charges, but she did not sustain the insubordination charge. ID at 14-16. She also concluded that the appellant failed

to prove his affirmative defenses. ID at 17-19. Finally, she found that the removal penalty was reasonable for the sustained charges. ID at 19.

¶13　　The appellant has filed a petition for review, challenging numerous aspects of the initial decision. Petition for Review (PFR) File, Tab 1. The agency has filed a response and cross petition for review, challenging the administrative judge's findings about its insubordination charge. PFR File, Tab 3. The appellant has responded to the agency's cross petition for review. PFR File, Tab 5.

## ANALYSIS

The administrative judge erred by not sustaining the charge of insubordination.

¶14　　Again, the agency has challenged the administrative judge's conclusion that its insubordination charge could not be sustained. PFR File, Tab 3 at 5, 11-16. For the reasons that follow, we sustain the charge and modify the initial decision accordingly.

¶15　　Insubordination is the willful and intentional refusal to obey an authorized order of a superior officer, which the officer is entitled to have obeyed. *Walker v. Department of the Army*, 102 M.S.P.R. 474, ¶ 8 (2006). Here, the agency's insubordination charge consisted of two specifications. IAF, Tab 5 at 8, 81-84. The first stemmed from an instruction that the appellant cease all communication with his former supervisor at work. According to the agency, the appellant was insubordinate when he subsequently sent mass emails that included his former supervisor as a recipient on August 24 and September 1, 2017, and by sending a more individualized email to his former supervisor on September 1, 2017. *Id.* at 83. The second specification stemmed from an instruction that the appellant cease sending mass emails without prior approval. *Id.* at 83-84. According to the agency, the appellant was insubordinate because he sent the September 1, 2017 mass email to thousands of employees. *Id.*

¶16    The appellant's response to the proposed removal did not substantively address his supervisor's orders or his alleged insubordination regarding the same. *Id.* at 57-68. Then, during adjudication of this appeal, the appellant disputed the charge without providing any substantive explanation, except to claim that he was exercising his right to free speech or engaging in protected whistleblowing.[3] *E.g.*, IAF, Tab 1 at 5, Tab 11 at 16-17, Tab 36 at 10-11; PFR File, Tab 5 at 19-21. As such, it seems that the following facts, which are supported by the agency's documentary submissions, are not materially disputed.

¶17    On June 15, 2017, a former supervisor of the appellant's contacted the appellant's current supervisor and an agency attorney, complaining that the appellant had been harassing him via email. IAF, Tab 5 at 147. This former supervisor asked for a plan of action to cease the harassment. *Id.* He also included the appellant's most recent, rambling message. *Id.* Among other things, this message from the appellant to his former supervisor referred to matters from many years earlier; described his former supervisor as not "us[ing] [his] brain"; claimed that the former supervisor had harassed the appellant all those years ago; and denied having harassed his former supervisor. *Id.* Later that day, the appellant's current supervisor instructed the appellant to cease all contact with his former supervisor at work. IAF, Tab 6 at 8. His current supervisor further indicated that the appellant should send communications to her, as an intermediary, if he ever had an official need to communicate with his former supervisor in the future. *Id.* In a response also dated the same date, the appellant acknowledged the instruction, indicating that he would comply. *Id.* at 15.

---

[3] Although the appellant generally referred to his emails as protected whistleblowing, he has not provided much of an explanation. He implicates only the first of his mass emails—the one that led to an order that he not send out any more mass emails without permission—in making this claim. PFR File, Tab 5 at 19 (referencing IAF, Tab 6 at 9). To the extent that the appellant is presenting a whistleblower reprisal claim, we address it below in our discussion of the appellant's whistleblower reprisal affirmative defense.

¶18     On August 24, 2017, just days after his proposed removal for AWOL and excessive absences that would eventually be replaced with one that added an insubordination charge, the appellant sent an email from a personal account to a couple of agency distribution lists, which included his former supervisor and thousands of other employees.[4]  IAF, Tab 5 at 103, Tab 6 at 9.  This email is rambling and difficult to understand but asserts various improprieties on the part of the agency, at least some of which were related to his proposed removal.  IAF, Tab 6 at 9.  For example, the email describes unnamed officials responsible for his removal as a "clan of racists," while summarily stating that the agency "discriminates against Hispanics" and had "hid[den] felonies."  *Id.*  The appellant's current supervisor immediately responded to the appellant, directing him to not send "district wide, regulatory wide, or any other email blasts to [agency] employees without [her] approval."  *Id.*  The appellant replied with another rambling email in which he claimed that his supervisor could not force him to keep silent, but she could facilitate a large financial lump sum settlement, equivalent to 6 years of "[f]ront pay," so that he could retire with 35 years of pay or service.  *Id.* at 244-45.

¶19     On September 1, 2017, the appellant once again sent an email to agency distribution lists, which included his former supervisor and thousands of other employees.  IAF, Tab 5 at 120, Tab 6 at 11-12.  This email was similarly rambling and indicated that the email included an attachment related to one of his prior appeals, for the purpose of showing how prior charges against him had been

---

[4] The record includes another email from the appellant, on the same date, addressed to about a dozen individuals, including the appellant's former supervisor.  IAF, Tab 5 at 146.  The email contains an attachment but no body text.  *Id.*  This appears to be another instance of the appellant defying the order to cease communicating with his former supervisor.  However, while the email is referenced in the general background portion of the proposal to remove the appellant, *id.* at 73, and the background portion specific to the insubordination charge, *id.* at 82, it is not specifically referenced within the accompanying specifications, *id.* at 83-84.  Under the circumstances, we will not consider this additional email from the appellant to his former supervisor.

"annihilate[ed]."[5]  *Id.*  That same day, the appellant also sent a separate email to his former supervisor and just one other employee, with the subject line indicating that he was attaching records, and body text that merely stated, "gREETINGS."[6]  IAF, Tab 5 at 117.

¶20     The administrative judge found that the insubordination charge failed because the agency's orders to the appellant were improper.  ID at 16.  She reasoned, citing *Smith v. General Services Administration*, 930 F.3d 1359 (Fed. Cir. 2019), that the orders were overly broad because they did not merely direct the appellant to refrain from making false or offensive statements.  ID at 16.  We disagree.

¶21     An agency charging an employee with failure to follow instructions or insubordination generally must show that the instructions were "proper." *Hamilton v. U.S. Postal Service*, 71 M.S.P.R. 547, 555-56 (1996).  The court in *Smith* suggested that an agency's instruction that an appellant not communicate with agency officials absent prior supervisory approval "may independently violate the Whistleblower Protection Act."  930 F.3d at 1362-63, 1366 n.2.  It reasoned that such an instruction was a personnel action under 5 U.S.C. § 2302(a)(2)(A)(xi).  *Smith*, 930 F.3d at 1366 n.2.  Under section 2302(a)(2)(A)(xi), the definition of "personnel action" includes "the implementation or enforcement of any nondisclosure policy, form, or agreement."

---

[5] It is not apparent whether the attachment—which the text of the email specifically referenced—was included in the record or even available to all recipients of the appellant's email message, which he sent from a personal email account, given the agency's systems for protecting against potentially harmful files.  IAF, Tab 6 at 11-12. But the surrounding circumstances do suggest that the appellant included an attachment in this email message.  *Id.*

[6] Again, it is not apparent whether the attachment was included in the record or even available to the recipients of the appellant's email message, which he sent from a personal email account.  IAF, Tab 5 at 117.  But again, the surrounding circumstances do suggest that the appellant included an attachment in this email message.  *Id.*

¶22     This case is distinguishable from *Smith* because the instruction at issue in *Smith* was motivated by the employee's prior protected disclosures. 930 F.3d at 1361-63, 1366 n.2. In other words, the instruction at issue was a nondisclosure instruction. Unlike the employee in *Smith*, the appellant did not prove that he made a protected disclosure in connection with any of the emails that prompted, or followed, his supervisor's June 15 and August 24, 2017 instructions regarding his communications.[7] Therefore, he has not established he is entitled to corrective action in connection with these instructions. *See Alarid v. Department of the Army*, 122 M.S.P.R. 600, ¶¶ 12-13 (2015).

¶23     However, it is also a prohibited personnel practice to implement or enforce "any nondisclosure policy, form, or agreement" unless it contains specific language regarding, among other matters, an employee's continued right to make protected disclosures and engage in protected activities, and does not prohibit disclosures made to certain entities. 5 U.S.C. § 2302(b)(13). Therefore, we have considered whether the communication restrictions were improper because they constituted such a prohibited personnel practice.[8] We answer this question in the negative.

¶24     Unlike the circumstances in *Smith*, there is little reason to question the motivations for the instructions at issue, and the agency did not seek to prevent disclosures. Further, the instructions were not overly broad. In *Smith*, an agency instructed the employee not to have any communications with upper level managers without the approval of his first-level supervisor. *Smith*, 930 F.3d at 1362. The instructions at issue here did not curtail the appellant's ability to contact individuals within or outside his chain of command. Further, the instructions were narrowly tailored to concerns raised by his prior emails.

---

[7] The content of these emails are further analyzed below in connection with the appellant's whistleblower reprisal affirmative defense.

[8] We do not decide here whether an instruction is a policy, form, or agreement within the meaning of 5 U.S.C. § 2302(b)(13).

¶25     To recall, the appellant was an employee of the agency, but he had not been in a duty status, performing work, for years.  Yet the appellant was sending accusatory messages to his former supervisor, which the former supervisor understandably found unwelcome.  The appellant was also sending mass email messages to thousands of agency employees about his own personal disputes with the agency.  Even if the messages could be read and disposed of in a brief amount of time, that time must be multiplied by the thousands of recipients to account for the burden it placed on agency operations.[9]  We find the resulting instructions from the appellant's current supervisor to cease direct communication with his former supervisor and cease sending mass emails were appropriate.  *See Lentine v. Department of the Treasury*, 94 M.S.P.R. 676, ¶¶ 2, 5, 15 (2003) (sustaining a failure to follow a direct order charge and removal of an employee for emailing another employee after an explicit order to cease such contact).  We disagree with the administrative judge's finding to the contrary.

¶26     Having determined the facts surrounding the alleged insubordination and the propriety of the underlying orders to the appellant, we now turn to the final element of the agency's burden—proof of intent.  *Parbs v. U.S. Postal Service*, 107 M.S.P.R. 559, ¶ 13 (2007), *aff'd per curiam*, 301 F. App'x 923 (Fed. Cir. 2008).  Intent is a state of mind that is generally proven by circumstantial evidence in the context of an insubordination charge.  *Parbs*, 107 M.S.P.R. 559, ¶ 13.  In considering whether the agency has proven intent, the Board must examine the totality of the circumstances.  *Id.*

---

[9] In response to emails the appellant sent on August 24 and September 1, 2017, an employee wrote to the appellant's supervisor that they were "upsetting and offensive for [him]," because it alleged that the employee and his sister had been hired and promoted illegally, and accused coworkers and supervisors of "unethical behavior" and "wrongful acts against [the appellant]."  IAF, Tab 5 at 106.  A note from a different agency official contained in the record reflects that "several employees expressed concern regarding" emails he sent on August 24 and September 1, 2017, and that the official responded by sending an email message reminding employees "of the measures they can take to assist with security and safety in the workplace."  IAF, Tab 6 at 249.

¶27    Here, we find that the record supports a finding of intent for the agency's first specification and its allegation about the September 1, 2017 email that the appellant sent to his former supervisor and one other agency official. IAF, Tab 5 at 117. The agency's order was clear, and the appellant acknowledged receipt of that order, yet he unambiguously defied the order just weeks later. IAF, Tab 5 at 117, Tab 6 at 8, 15. The appellant has not substantively explained his actions in any way that would negate what appears to be his intentional defiance of the order to stop contacting his former supervisor. *See Parbs*, 107 M.S.P.R. 559, ¶ 20 (sustaining an insubordination charge when the appellant did not offer significant contrary proof to rebut the agency's circumstantial evidence); *Redfearn v. Department of Labor*, 58 M.S.P.R. 307, 312-13 (1993) (finding the intent element proven for an insubordination charge when the agency showed that an appellant was given instructions she did not follow and the appellant failed to offer any explanation such as impossibility or lack of knowledge).

¶28    For the other emails referenced in this specification, the August 24 and September 1, 2017 mass emails, it is plausible that the appellant did not realize the distribution lists he used included his former supervisor. *See* IAF, Tab 5 at 103, Tab 6 at 9, 11-12. But that explanation is not one the appellant has presented. As previously stated, he has offered virtually no defense to the insubordination charge, except to summarily claim that he was exercising his right to free speech.[10] Therefore, we also find it more likely true than untrue that

---

[10] Below, the appellant only briefly alluded to his constitutional right to free speech, and he only did so in the context of extensive filings that were difficult to understand. IAF, Tab 11 at 16-17, Tab 36 at 11. Because the administrative judge did not explicitly address this issue, we will do so now.

To determine whether employee speech is protected by the First Amendment, the Board must determine: (1) whether the speech addressed a matter of public concern and, if so, (2) whether the agency's interest in promoting the efficiency of the service outweighs the employee's interest as a citizen. *Smith v. Department of Transportation*, 106 M.S.P.R. 59, ¶ 46 (2007). To illustrate, the Board has explained that a discussion regarding racial relations or discrimination is a matter of public concern entitled to the full protection of the First Amendment but an equal employment opportunity matter that

the appellant intentionally defied the order not to contact his former supervisor when he sent the mass emails with the former supervisor as one of the recipients. *See Parbs*, [107 M.S.P.R. 559](#), ¶ 20; *Redfearn*, 58 M.S.P.R. at 312-13.

¶29    Lastly, we find that the record also supports a finding of intent for the agency's second specification and its allegation about the mass email sent on September 1, 2017. The corresponding order from just days before was unambiguous, the appellant responded by implying that he would not comply, and then he defied the order. IAF, Tab 6 at 9, 11-12, 244-45. Once more, the appellant has not substantively explained his actions in any way that would negate what appears to be his intentional defiance of a valid order to stop sending mass emails without prior approval. *See Parbs*, [107 M.S.P.R. 559](#), ¶ 20; *Redfearn*, 58 M.S.P.R. at 312-13.

¶30    In sum, we find that the agency has met its burden and we therefore sustain the insubordination charge. We reverse the administrative judge's contrary conclusion.

We decline to rule on the agency's AWOL and excessive absences charges.

¶31    The agency's AWOL charge contained 59 specifications—one for each day that the appellant was absent without authorization between July 5 and October 6, 2017. IAF, Tab 5 at 75-80. Its excessive absence charge covered all 267 workdays for which the appellant was absent from September 6, 2016,

---

is personal in nature and limited to the complainant's own situation is not a matter of public concern. *Id.*, ¶ 47.

In this case, the emails underlying the appellant's insubordination charge implicated his own personal grievances rather than any matter of public concern. IAF, Tab 5 at 117, 120. For that reason alone, the appellant's claim fails. But even if his emails could be construed as touching on a matter of public concern, we would find that the agency's interest outweighed the appellant's. The agency's interest was to stop the appellant from contacting his former supervisor, who considered the appellant's contacts harassing, and to stop the appellant from interrupting the work of thousands of employees with mass emails. The agency did not altogether prohibit the appellant from voicing his interests as an employee or citizen.

through October 6, 2017. *Id.* at 80. The administrative judge found that the agency proved both charges. ID at 14-16.

¶32     On review, the appellant asserts that he was entitled to leave under the Family and Medical Leave Act of 1993 (FMLA) during the periods at issue in the AWOL and excessive absence charges. PFR File, Tab 1 at 5-8, 17. The appellant raised this issue below, but the administrative judge did not address the matter in her initial decision. IAF, Tab 1 at 5, Tab 13 at 10-11.

¶33     An agency bears the burden of proving that it complied with the FMLA as part of its overall burden of proving a leave-based charge. *Somuk v. Department of the Navy*, 117 M.S.P.R. 18, ¶ 11 (2011). Like most civil service employees, the appellant was covered under Title II of the FMLA. IAF, Tab 5 at 6; FMLA, Pub. L. No. 103-3, § 201(a)(1), 107 Stat. 6, 19 (codified, in pertinent part, at 5 U.S.C. § 6381(1)(A), and incorporating the definitions of an "employee" under Title II of the FMLA from 5 U.S.C. § 6301(2)); 5 C.F.R. § 630.1201(b)(1)(i)(A); *see generally* 5 C.F.R. part 630, subpart L (containing the implementing regulations of the Office of Personnel Management (OPM)). Under FMLA Title II, an eligible employee is "entitled to a total of 12 administrative workweeks of leave during any 12-month period" for, as relevant here, "a serious health condition that makes the employee unable to perform the functions of the employee's position." 5 U.S.C. § 6382(a)(1)(D); *Landahl v. Department of Commerce*, 83 M.S.P.R. 40, ¶ 8 (1999); *see* 5 C.F.R. §§ 610.102, 630.1202 (defining an administrative workweek for purposes of FMLA, in relevant part, as an agency-designated period consisting of "7 consecutive 24 hour periods").

¶34     This case presents an issue regarding whether the agency should have designated a portion of the appellant's leave as FMLA-protected even though he did not invoke FMLA-protected leave. The Board has previously held that, even if an employee does not specifically mention the FMLA when requesting leave, the requirement to invoke the FMLA may be satisfied as long as the employee presents the agency with sufficient evidence to trigger consideration of his

absence under the FMLA. *Bowen v. Department of the Navy*, 112 M.S.P.R. 607, ¶ 8 (2009), *aff'd per curiam*, 402 F. App'x 521 (Fed. Cir. 2010). However, this holding appears to be contrary to OPM's FMLA regulations. Specifically, section 630.1203(b) provides that "[a]n employee must invoke his or her entitlement to FMLA leave" and generally may not invoke that entitlement retroactively. Section 630.1203(h) also states that "[a]n agency may not put an employee on [FMLA] leave and may not subtract leave from an employee's entitlement to [FMLA leave] unless the agency has obtained confirmation from the employee of his or her intent to invoke entitlement to [FMLA leave]." OPM explained these provisions by stating that, "The requirement that an employee must initiate action to take FMLA leave is consistent with all other Federal leave policies and programs in that the employee is responsible for requesting leave or other time off from work." Family and Medical Leave, 65 Fed. Reg. 26,483-01, 26,483, 26,486-87 (May 8, 2000) (codified as amended, in relevant part, at 5 C.F.R. § 630.1203(b), (h)).

¶35   The circumstances of this case suggest that the appellant's continued absence was related to a serious health condition. *See supra* ¶¶ 6-10. But we found no indication that the appellant invoked FMLA protection for his leave, even though the numerous leave slips he completed during the relevant period contained a space for him to do so. IAF, Tab 9 at 29-30, 37-38, 41, 43, 45, 47-50. This seems to be true of both the 42 weeks of leave the agency granted for his mental health condition leading up to his AWOL, as well as the period at issue in the AWOL and excessive absence charges, which amounts to less than the 12 weeks contemplated by the FMLA. So, the facts before us present a number of questions, including (1) whether *Bowen* remains good law, given the seemingly contradictory regulatory provisions, (2) whether the agency could and should have afforded the appellant FMLA leave for any period, despite him not invoking FMLA when specifically prompted with an opportunity to do just that and, if so, (3) for what period should that FMLA leave have applied to his absence.

¶36   At this time, we decline to rule on these or related questions. We also decline to address the appellant's other arguments contesting these charges. PFR File, Tab 1 at 10-11, 17, 19, 21-22. These include arguments that he should have been granted advanced leave, his absence was not a burden to the agency, the agency did not need to fill his position, and his approved absences did not continue beyond a reasonable time. *Id.* We need not reach these issues because we find that the agency's insubordination charge, alone, supports the appellant's removal. *Infra* ¶¶ 55-58; *see, e.g.*, *Alvarado v. Department of the Air Force*, 103 M.S.P.R. 1, ¶¶ 2, 40-41 (2006) (finding that the penalty of removal was reasonable based on a charge of insubordinate defiance of authority, so it was unnecessary to address the additional charge of misuse of Government equipment), *aff'd*, 626 F. Supp. 2d 1140 (D.N.M. 2009), *aff'd*, 490 F. App'x 932 (10th Cir. 2012); *Luciano v. Department of the Treasury*, 88 M.S.P.R. 335, ¶¶ 3, 10-13, 23 (2001) (finding it unnecessary to determine whether an administrative judge erred in failing to sustain all of the specifications supporting an agency's insubordination charge because the sustained specifications and the proven charge of AWOL warranted the appellant's removal), *aff'd per curiam*, 30 F. App'x 973 (Fed. Cir. 2002).

The appellant did not prove his affirmative defense of disability discrimination.

¶37   The appellant argued below that his removal was the product of disability discrimination. IAF, Tab 1 at 5, Tab 11 at 12, 15. Before we turn to the administrative judge's findings and the appellant's arguments on review, it is useful to recount some of the most salient facts.

¶38   The appellant began taking extensive leave in 2012, consistent with his psychiatrist's letters about his condition and the need for time off. *Supra* ¶ 3; *e.g.*, 0167 IAF, Tab 11, Part 1 at 32, 38 of 58. Among other things, these letters described the appellant as suffering from a deteriorating psychiatric condition that was, at times, totally disabling and consisting of aggressive episodes. 0167 IAF, Tab 11, Part 2 at 13. Any disability-related inquiry by an employer must be

"shown to be job-related and consistent with business necessity." 42 U.S.C. § 12112(d)(4)(A); *Archerda v. Department of Defense*, 121 M.S.P.R. 314, ¶ 30 (2014). The Board previously found, in *Rosario-Fabregas*, 122 M.S.P.R. 468, ¶¶ 14-17, that the agency's requests for a medical release in 2012 met this standard and were therefore permissible. The Board explained that the agency had a reasonable belief that the appellant's ability to perform the essential functions of his position was impaired, and also reasonably believed that he posed a direct threat due to his condition. *Id.* In November 2012, the appellant's psychiatrist indicated that he could attempt to return to a part-time schedule on a trial basis for 3 weeks, but the agency deemed his opinion both contradictory and insufficient in that it failed to explicitly address the essential functions of the appellant's position. 0167 IAF, Tab 11, Part 1 at 8-9 of 58, Part 4 at 4-7 of 27. In the days that followed, the agency took the removal action that the Board later mitigated to a suspension. *Supra* ¶¶ 3-4.

¶39    While preparing for the appellant's return to work in 2016, after the Board mitigated his removal, the agency requested a release from his medical provider. *Supra* ¶ 6. Although the Board's decision to mitigate the appellant's prior removal did not address the sufficiency of the appellant's November 2012 medical update, we find that it did not suffice for purposes of the attempted return to duty in 2016. This is because, among other things, the November 2012 medical update was several years old and had merely suggested that the appellant was, at that point, ready for a brief trial run at working part-time. 0167 IAF, Tab 11, Part 4 at 4-7 of 27. The November 2012 medical update was also lacking in terms of the appellant's ability to perform the essential functions of his position. *Id.* It instead described the appellant in general terms such as the appellant being able to understand and carry out only "lowest complexity instructions." *Id.* at 7 of 27.

¶40    The appellant did not immediately submit the medical release requested in 2016, nor did he return to work. Instead, the appellant began requesting

extensive annual and sick leave. *Id.* When the appellant did eventually submit a medical note from his provider, it indicated that the appellant's condition would not allow his return to work until at least June 2017. *Supra* ¶ 7; IAF, Tab 9 at 46. As that date neared and in the months that followed, the agency unsuccessfully tried to obtain verification that the appellant was medically cleared for work before eventually taking the removal action before us. *Supra* ¶¶ 8-11.

¶41 In her initial decision, the administrative judge found that the appellant's disability discrimination claim appeared to be based on the agency's requirement that he provide a medical release to return to work, but the request was proper. ID at 17. On petition for review, the appellant disputes the administrative judge's finding, arguing that agency should not have required a medical release because its safety concerns were unfounded. PFR File, Tab 1 at 8-9, 22.

¶42 The appellant has not alleged that he provided any updated medical documentation to the agency that might have ameliorated the agency's prior concerns. Nor has he presented any such evidence before the Board. The agency's longstanding and justified concerns about the appellant's ability to safely and effectively perform the essential functions of his position and his previously diagnosed potential for aggression would have been exacerbated by his submission of medical notes indicating he "should not return to work." IAF, Tab 9 at 40, 42, 44, 46. The notes provided no explanation suggesting the appellant had recovered. *Id.* The only specific information the appellant's psychiatrist provided for his continued absence was that the appellant was "anxious," his capacity to concentrate was decreased, and he had "worry related to several issues arising in the agency with his return to work." *Id.* at 46. Thus, the appellant's own medical evidence suggested he had not improved, and may have deteriorated.

¶43 On review, the appellant also argues that the agency committed disability discrimination by failing to offer him a reasonable accommodation for his condition. PFR File, Tab 1 at 8-9, 15-16, 20. The appellant raised this argument

below, but the administrative judge did not address it.  IAF, Tab 11 at 8, 11-12, 14-16, 22-23, Tab 36 at 12-13.  We have therefore considered the argument but find it unavailing.  As the Board previously explained in his prior appeal, a failure to accommodate claim will fail if an employee's refusal to engage in the interactive process prevented the agency from identifying a reasonable accommodation.  *Rosario-Fabregas*, 122 M.S.P.R. 468, ¶ 18; *see Herb L. v. U.S. Postal Service*, EEOC Appeal No. 0120140330, 2016 WL 4492212, at *7 (Aug. 17, 2016) (finding that a complainant who did not provide requested documentation regarding the "parameters" of his need to rest his hip did not demonstrate that he was entitled to a reasonable accommodation).  Here, the appellant requested an accommodation in the form of part-time work in February 2017, at the same time that his psychiatrist said he was unable to work. IAF, Tab 8 at 190, Tab 9 at 44, 46.  The agency promptly and repeatedly requested supportive medical documentation that the appellant never provided. IAF, Tab 6 at 35-36, 237, Tab 8 at 188-90, 201-02, 244-45.  The agency's request was reasonable and appropriate under the circumstances because whether or how a modification to his work schedule would have enabled the appellant to perform his duties is not obvious and had not been addressed in any of the documentation that the appellant had previously provided.  *See White v. Department of Veterans Affairs*, 120 M.S.P.R. 405, ¶ 14 (2013).  Therefore, the appellant's failure to engage precludes him from prevailing on this failure to accommodate claim.

¶44      The appellant separately argues that the agency should have accommodated him by providing him additional leave.  PFR File, Tab 1 at 9.  The use of accrued paid leave or unpaid leave can be a form of reasonable accommodation.  *Willa B. v. Department of Veterans Affairs*, EEOC Appeal No. 2021000628, 2022 WL 1631370, at *5 (Apr. 27, 2022).  However, "LWOP for an indefinite period of time with absolutely no indication that one will or could return is not an accommodation contemplated under the Rehabilitation Act."  *Hilda H. v. Department of Veterans Affairs*, EEOC Appeal No. 0120162443, 2018 WL

1392246, at \*4 (Mar. 6, 2018), *req. to reconsider denied*, EEOC Request No. 0520180318, 2018 WL 3584199 (July 3, 2018). Before proposing his removal, the agency already had provided the appellant with nearly 1 full year of approved leave while it waited for some indication that he might be able to return to duty. We find that the appellant has not shown that the agency violated his rights by declining to continue with this course of action.

¶45     The appellant also argues that the agency removed him in retaliation for opposing disability discrimination, i.e., for refusing to sign what he believed to be an overly broad release for the agency-appointed psychiatrist to obtain his health records. PFR File, Tab 1 at 11-14, 19-20. However, because the appellant did not raise this argument below, and it is not based on previously unavailable evidence, we decline to consider it. *See Clay v. Department of the Army*, 123 M.S.P.R. 245, ¶ 6 (2016).

The appellant did not prove his affirmative defense of discrimination based on national origin.

¶46     National origin discrimination is prohibited under Title VII of the Civil Rights Act of 1964. 42 U.S.C. § 2000e-16(a). To prove an affirmative defense of national origin discrimination, an appellant must prove that national origin was a motivating factor in the contested personnel action. *Pridgen v. Office of Management and Budget*, 2022 MSPB 31, ¶¶ 20-21. Such a showing may entitle an appellant to injunctive or other "forward looking relief." *Id.*, ¶ 22. To obtain full relief, including status quo ante relief, compensatory damages, or other forms of relief related to the end result of an employment decision, an appellant must prove that the prohibited consideration "was a but-for cause of the employment outcome." *Id.* (quoting *Babb v. Wilkie*, 140 S. Ct. 1168, 1171, 1177-78).

¶47     In this case, the administrative judge found that the appellant was "of the view that the agency discriminated against him because he is Hispanic," but that the appellant did not present any evidence to support his claim. ID at 17. The appellant disputes this finding on review, arguing that his 2010 removal without

due process constitutes evidence of national origin discrimination. PFR File, Tab 1 at 15, 23. We find, however, that the procedural defects in the agency's 2010 removal action are not probative of whether the appellant's 2018 removal was motivated by national origin discrimination. We agree with the administrative judge that the appellant has presented no evidence to support this affirmative defense.[11] ID at 17.

The appellant did not prove his affirmative defense of whistleblower reprisal.

¶48    In adverse action appeal, an appellant's claim of reprisal for making a protected disclosure under 5 U.S.C. § 2302(b)(8), or engaging in protected activity under 5 U.S.C. § 2302(b)(9)(A)(i), (B), (C), or (D), is analyzed under the burden-shifting scheme set forth in 5 U.S.C. § 1221(e). *Alarid*, 122 M.S.P.R. 600, ¶ 12. The appellant must first prove that his disclosure or activity was protected under sections 2302(b)(8) or (b)(9)(A)(i), (B), (C), or (D). *Alarid*, 122 M.S.P.R. 600, ¶¶ 12-13. He must next prove that his protected disclosure or activity was a contributing factor in the challenged personnel action. *Id.* If the appellant makes both of these showings by preponderant evidence, the burden of persuasion shifts to the agency to prove by clear and convincing evidence that it would have taken the same action in the absence of the appellant's disclosure or activity. *Id.*, ¶ 14.

¶49    In this case, the appellant argued below that his removal was in retaliation for protected whistleblowing, but the grounds of his claim were unclear. IAF, Tab 11 at 4, 23, 30, 32. The administrative judge notified the appellant of how to prove an affirmative defense of whistleblower retaliation, IAF, Tab 17 at 2-5, but the appellant's subsequent pleadings did little to clarify the matter. In any event, the administrative judge construed the appellant's defense as pertaining to the series of emails at issue in the insubordination charge, i.e., the ones that led to his

---

[11] To the extent that the appellant's claim could be construed as an affirmative defense of race discrimination, which is prohibited under the same statute, the same analysis would apply. *See Pridgen*, 2022 MSPB 31, ¶¶ 20-22.

supervisor's instructions and the ones that violated those instructions. ID at 19; *e.g.*, IAF, Tab 5 at 120-39, Tab 6 at 9. The administrative judge found that the appellant provided no evidence in support of the allegations contained in those emails and that he therefore failed to show that that he had a reasonable belief that either of the emails evidenced Government wrongdoing. ID at 19.

¶50    On petition for review, the appellant argues that the agency was overly lenient with management officials who committed misconduct similar to that for which the appellant had been removed in 2010. PFR File, Tab 1 at 22-23. In support of his contention, the appellant cites to a discovery response that the agency provided him in connection with his second removal appeal. *Id.* at 23; IAF, Tab 6 at 104-10. The appellant's argument provides no basis to disturb the initial decision.

¶51    A protected whistleblower disclosure is a disclosure that an appellant reasonably believes evidences a violation of any law, rule, or regulation, gross mismanagement, a gross waste of funds, an abuse of authority, or a substantial and specific danger to public health or safety. *Smith v. Department of the Army*, 2022 MSPB 4, ¶ 14. A reasonable belief exists if a disinterested observer with knowledge of the essential facts known to and readily ascertainable by the appellant could reasonably conclude that the actions of the Government evidence one of the categories of wrongdoing listed in section 2302(b)(8)(A). *Id.* The appellant need not prove that the matter disclosed actually established one of the types of wrongdoing listed under section 2302(b)(8)(A); rather, the appellant must show that the matter disclosed was one which a reasonable person in his position would believe evidenced any of the situations specified in 5 U.S.C. § 2302(b)(8). *Id.*

¶52    In his August 24, 2017 email, the appellant accused the agency of abusing its authority by allowing certain higher-level management officials accused of misconduct to separate from service with a clean record. IAF, Tab 6 at 9. The agency's discovery response, however, indicates that one of the two named

officials resigned in the face of a notice of proposed removal and that the other was disciplined with a letter of reprimand and continued his employment at the agency. *Id.* at 104-05. Therefore, even having considered the agency's discovery response, we agree with the administrative judge that the appellant has provided no evidence to support the allegations contained in this email. ID at 19.

¶53 We separately note that the appellant's response to the agency's cross petition for review seems to present another theory about his whistleblower retaliation claim. The appellant suggests that his August 24, 2017 mass email was also protected whistleblowing because it contained allegations of discrimination. PFR File, Tab 5 at 19; IAF, Tab 6 at 9. We need not consider this claim because a reply is limited to factual and legal issues raised by another party in response to the petition for review and may not raise new allegations of error. 5 C.F.R. § 1201.114(a)(4). In any event, even if we were to consider this argument, we would not grant the appellant's petition for review. Although the appellant's email message summarily asserted that a certain agency office discriminated against Hispanics, IAF, Tab 6 at 9, this allegation is not a protected disclosure, *see Salerno v. Department of the Interior*, 123 M.S.P.R. 230, ¶ 6 (2016) (recognizing that disclosures must be specific and detailed, not vague allegations of wrongdoing); *see also Edwards v. Department of Labor*, 2022 MSPB 9, ¶¶ 10-17, 22 (reaffirming that Title VII-related claims are excluded from protection under the whistleblower protection statutes).

The appellant has not shown that his removal was the product of harmful procedural error or a due process violation.

¶54 An agency's failure to provide a tenured public employee with an opportunity to present a response, either in person or in writing, to an appealable agency action that deprives him of his property right in his employment constitutes an abridgement of his constitutional right to minimum due process of law, i.e., prior notice and an opportunity to respond. *Cleveland Board of Education v. Loudermill*, 470 U.S. 532, 546 (1985). In this case, the appellant

asserts on review, as he did below, that the agency violated his right to due process. PFR File, Tab 1 at 7, 11, 13, 15-16, 23-24; IAF, Tab 1 at 5, Tab 11 at 11, 19, 27, Tab 36 at 5-6, 12, 17. The administrative judge did not address the due process issue specifically, but having reviewed the appellant's arguments, we find that he has not established a due process violation. Although the appellant asserts that the agency violated his due process rights in many respects, his assertions do not pertain to the issues of notice and opportunity to respond. For instance, the appellant argues that the agency violated his due process rights by requiring him to obtain a medical release before returning to work, by failing to provide medical records to the agency-appointed psychiatrist without the appellant's authorization, and by not granting him additional LWOP. PFR File, Tab 1 at 11, 13, 22. We find that none of the appellant's arguments are sufficient to establish a due process violation.

¶55		The appellant also argues on review that the agency committed harmful procedural error. PFR File, Tab 1 at 5, 7, 16-17, 23-24. However, it does not appear that he raised this issue below. *See Clay*, 123 M.S.P.R. 245, ¶ 6. In any event, to prove that the agency committed harmful procedural error under 5 U.S.C. § 7701(c)(2)(A), an appellant must show both that the agency committed procedural error and that the error was harmful. *Parker v. Defense Logistics Agency*, 1 M.S.P.R. 505, 513 (1980). Here, the appellant has neither identified nor cited the agency rules or regulations in question, and thus has not shown procedural error. *Simmons v. Department of the Navy*, 11 M.S.P.R. 82, 83-84 (1982). For instance, he argues that the agency's failure to account for his difficulty in obtaining a medical release and its failure to grant him additional LWOP were harmful procedural errors, but he identified no corresponding agency rule. PFR File, Tab 1 at 17, 22. Therefore, even if we were to consider the appellant's late-raised arguments, we would find that he has not established his affirmative defense.

The Board lacks jurisdiction over the instant appeal as a constructive suspension claim.

¶56     The appellant argues for the first time on petition for review that his absence from duty constituted an appealable constructive suspension. PFR File, Tab 1 at 24. Although the appellant did not raise this argument below, we exercise our discretion to address it here. Concerning the absence at issue in this appeal, from September 6, 2016, through his August 24, 2018 removal, we find that the appellant cannot establish that any period of this absence constituted an appealable constructive suspension.

¶57     To establish Board jurisdiction over a constructive suspension appeal, an appellant must prove by preponderant evidence that (1) he lacked a meaningful choice in his absence; and (2) it was the agency's wrongful actions that deprived him of that choice. *Bean v. U.S. Postal Service*, 120 M.S.P.R. 397, ¶ 8 (2013). As explained above, regardless of whether the appellant had a meaningful choice in his absence, no period of that absence was the result of the agency's improper acts. From September 6, 2016, through June 1, 2017, the appellant was absent on his psychiatrist's orders, and thereafter, he was absent because he was unable to furnish a medical release, which the agency was fully entitled to require as a condition of his return.

Removal is the maximum reasonable penalty for the appellant's insubordination.

¶58     Because we have declined to rule on the AWOL and excessive absences charges, and we are proceeding based only on the insubordination charge, it is appropriate for us to analyze the penalty as if not all charges were sustained. *Alvarado*, 103 M.S.P.R. 1, ¶ 44. When the Board sustains fewer than all of the agency's charges, and the agency either indicates that it would have imposed the same penalty based on the sustained charges, or does not indicate to the contrary, the Board's role is not to independently determine the penalty, but to decide whether the agency's choice of penalty is appropriate. *Negron v. Department of Justice*, 95 M.S.P.R. 561, ¶ 32 (2004) (citing *Lachance v. Devall*, 178 F.3d 1246,

1258-59 (Fed. Cir. 1999)). The Board cannot "substitute its will" for that of the agency, which is entrusted with managing its workforce. *Id.* (quoting *Lachance*, 178 F.3d at 1258). Rather, the Board "may mitigate an unreasonably severe agency penalty to bring the penalty within the bounds of reasonableness." *Id.* (quoting *Lachance*, 178 F.3d at 1258).

¶59 As previously mentioned, the proposal to remove the appellant stated that any of the charges would support his removal from service. IAF, Tab 5 at 75-84. Further, the agency submitted a declaration from the deciding official, in which he stated under penalty of perjury that "[a]ny one of the charges alone would have supported [the] decision to remove [the appellant] from service." IAF, Tab 35 at 19-20. Such a declaration, if uncontested as appears to be the case here, proves the facts it asserts. *Woodall v. Federal Energy Regulatory Commission*, 30 M.S.P.R. 271, 273 (1986).

¶60 The deciding official completed a *Douglas* factor checklist around the same time as his decision letter. IAF, Tab 5 at 14-15; *see Douglas v. Veterans Administration*, 5 M.S.P.R. 280, 305-06 (1981) (providing a nonexhaustive list of factors that may be relevant in determining an appropriate penalty). This checklist described the appellant's documented mental and emotional distress as a mitigating factor, along with his 29 years of Federal service. IAF, Tab 5 at 15. It also indicated that the insubordination charge, alone, would warrant removal under the agency's table of penalties. *Id.* at 14. The deciding official's *Douglas* factor checklist further referred to numerous other factors as aggravating for purposes of the penalty determination, including the seriousness of the appellant's insubordination, his prior 30-day suspension, the multiple notices that his conduct was unacceptable, and his lack of remorse. *Id.* at 14-15.

¶61 In his petition, the appellant suggests that removal was too harsh a penalty for any of his alleged misconduct, particularly because of his past service and disabilities. PFR File, Tab 1 at 4, 16. We disagree. We find that the facts at hand support the appellant's removal, even if we only consider the sustained

insubordination charge. *See Parbs*, [107 M.S.P.R. 559](), ¶¶ 9, 12, 24-26 (construing an agency's charge as one of insubordination concerning a single incident and finding that it warranted removal); *Murry v. General Services Administration*, [93 M.S.P.R. 554](), ¶¶ 2, 6, 8-9 (2003) (finding that an administrative judge erred by mitigating a removal to a suspension when the agency proved only one of its three specifications supporting its insubordination charge), *aff'd*, 97 F. App'x 319 (Fed. Cir. 2004).

¶62      In conclusion, we find that the agency proved its charge of insubordination. We further find that the insubordination charge, alone, supports the penalty of removal, so we need not rule on the agency's AWOL and excessive absences charges. We also find that the appellant failed to prove any affirmative defense. Accordingly, we sustain the appellant's removal from service.

## NOTICE OF APPEAL RIGHTS[12]

The initial decision, as supplemented by this Final Order, constitutes the Board's final decision in this matter. [5 C.F.R. § 1201.113](). You may obtain review of this final decision. [5 U.S.C. § 7703](a)(1). By statute, the nature of your claims determines the time limit for seeking such review and the appropriate forum with which to file. [5 U.S.C. § 7703](b). Although we offer the following summary of available appeal rights, the Merit Systems Protection Board does not provide legal advice on which option is most appropriate for your situation and the rights described below do not represent a statement of how courts will rule regarding which cases fall within their jurisdiction. If you wish to seek review of this final decision, you should immediately review the law applicable to your claims and carefully follow all filing time limits and requirements. Failure to file

---

[12] Since the issuance of the initial decision in this matter, the Board may have updated the notice of review rights included in final decisions. As indicated in the notice, the Board cannot advise which option is most appropriate in any matter.

within the applicable time limit may result in the dismissal of your case by your chosen forum.

Please read carefully each of the three main possible choices of review below to decide which one applies to your particular case. If you have questions about whether a particular forum is the appropriate one to review your case, you should contact that forum for more information.

**(1) <u>Judicial review in general</u>**. As a general rule, an appellant seeking judicial review of a final Board order must file a petition for review with the U.S. Court of Appeals for the Federal Circuit, which must be <u>received</u> by the court within **60 calendar days** of <u>the date of issuance</u> of this decision. 5 U.S.C. § 7703(b)(1)(A).

If you submit a petition for review to the U.S. Court of Appeals for the Federal Circuit, you must submit your petition to the court at the following address:

U.S. Court of Appeals
for the Federal Circuit
717 Madison Place, N.W.
Washington, D.C. 20439

Additional information about the U.S. Court of Appeals for the Federal Circuit is available at the court's website, www.cafc.uscourts.gov. Of particular relevance is the court's "Guide for Pro Se Petitioners and Appellants," which is contained within the court's Rules of Practice, and Forms 5, 6, 10, and 11.

If you are interested in securing pro bono representation for an appeal to the U.S. Court of Appeals for the Federal Circuit, you may visit our website at http://www.mspb.gov/probono for information regarding pro bono representation for Merit Systems Protection Board appellants before the Federal Circuit. The Board neither endorses the services provided by any attorney nor warrants that any attorney will accept representation in a given case.

**(2) Judicial or EEOC review of cases involving a claim of discrimination**.  This option applies to you <u>only</u> if you have claimed that you were affected by an action that is appealable to the Board and that such action was based, in whole or in part, on unlawful discrimination.  If so, you may obtain judicial review of this decision—<u>including a disposition of your discrimination claims</u>—by filing a civil action with an appropriate U.S. district court (*not* the U.S. Court of Appeals for the Federal Circuit), within **30 calendar days** <u>after you receive</u> this decision.   5 U.S.C. § 7703(b)(2); *see Perry v. Merit Systems Protection Board*, 582 U.S. 420 (2017).  If you have a representative in this case, and your representative receives this decision before you do, then you must file with the district court no later than **30 calendar days** <u>after your representative</u> receives this decision.  If the action involves a claim of discrimination based on race, color, religion, sex, national origin, or a disabling condition, you may be entitled to representation by a court-appointed lawyer and to waiver of any requirement of prepayment of fees, costs, or other security.  *See* 42 U.S.C. § 2000e-5(f) and 29 U.S.C. § 794a.

Contact information for U.S. district courts can be found at their respective websites, which can be accessed through the link below:

http://www.uscourts.gov/Court_Locator/CourtWebsites.aspx.

Alternatively, you may request review by the Equal Employment Opportunity Commission (EEOC) of <u>your discrimination claims only, excluding all other issues</u>.   5 U.S.C. § 7702(b)(1).  You must file any such request with the EEOC's Office of Federal Operations within **30 calendar days** <u>after you receive</u> this decision.   5 U.S.C. § 7702(b)(1).  If you have a representative in this case, and your representative receives this decision before you do, then you must file with the EEOC no later than **30 calendar days** <u>after your representative receives</u> this decision.

If you submit a request for review to the EEOC by regular U.S. mail, the address of the EEOC is:

Office of Federal Operations
Equal Employment Opportunity Commission
P.O. Box 77960
Washington, D.C.  20013

If you submit a request for review to the EEOC via commercial delivery or by a method requiring a signature, it must be addressed to:

Office of Federal Operations
Equal Employment Opportunity Commission
131 M Street, N.E.
Suite 5SW12G
Washington, D.C.  20507

**(3) <u>Judicial review pursuant to the Whistleblower Protection Enhancement Act of 2012</u>**.  This option applies to you <u>only</u> if you have raised claims of reprisal for whistleblowing disclosures under 5 U.S.C. § 2302(b)(8) or other protected activities listed in 5 U.S.C. § 2302(b)(9)(A)(i), (B), (C), or (D). If so, and your judicial petition for review "raises no challenge to the Board's disposition of allegations of a prohibited personnel practice described in section 2302(b) other than practices described in section 2302(b)(8), or 2302(b)(9)(A)(i), (B), (C), or (D)," then you may file a petition for judicial review either with the U.S. Court of Appeals for the Federal Circuit or any court of appeals of competent jurisdiction.[13]  The court of appeals must <u>receive</u> your petition for review within **60 days** of the <u>date of issuance</u> of this decision. 5 U.S.C. § 7703(b)(1)(B).

---

[13] The original statutory provision that provided for judicial review of certain whistleblower claims by any court of appeals of competent jurisdiction expired on December 27, 2017.  The All Circuit Review Act, signed into law by the President on July 7, 2018, permanently allows appellants to file petitions for judicial review of MSPB decisions in certain whistleblower reprisal cases with the U.S. Court of Appeals for the Federal Circuit or any other circuit court of appeals of competent jurisdiction. The All Circuit Review Act is retroactive to November 26, 2017.  Pub. L. No. 115-195, 132 Stat. 1510.

If you submit a petition for judicial review to the U.S. Court of Appeals for the Federal Circuit, you must submit your petition to the court at the following address:

U.S. Court of Appeals
for the Federal Circuit
717 Madison Place, N.W.
Washington, D.C. 20439

Additional information about the U.S. Court of Appeals for the Federal Circuit is available at the court's website, www.cafc.uscourts.gov. Of particular relevance is the court's "Guide for Pro Se Petitioners and Appellants," which is contained within the court's Rules of Practice, and Forms 5, 6, 10, and 11.

If you are interested in securing pro bono representation for an appeal to the U.S. Court of Appeals for the Federal Circuit, you may visit our website at http://www.mspb.gov/probono for information regarding pro bono representation for Merit Systems Protection Board appellants before the Federal Circuit. The Board neither endorses the services provided by any attorney nor warrants that any attorney will accept representation in a given case.

Contact information for the courts of appeals can be found at their respective websites, which can be accessed through the link below:

http://www.uscourts.gov/Court_Locator/CourtWebsites.aspx.


FOR THE BOARD:                          /s/ for
                              Jennifer Everling
                              Acting Clerk of the Board
Washington, D.C.